# United States Court of Appeals
# for the Fifth Circuit

United States Court of Appeals
Fifth Circuit

**FILED**

May 21, 2025

Lyle W. Cayce
Clerk

_____

No. 22-11001

_____

United States of America,

*Plaintiff—Appellee,*

*versus*

Kyle Lamar West,

*Defendant—Appellant.*

_____

Appeal from the United States District Court
for the Northern District of Texas
USDC No. 5:22-CR-37-1

_____

## PUBLISHED ORDER

Before Elrod, *Chief Judge*, and Willett and Duncan, *Circuit Judges*.
Per Curiam:

The court having been polled at the request of one of its members, and a majority of the judges who are in regular active service and not disqualified not having voted in favor (Fed. R. App. P. 40 and 5th Cir. R. 40), on the Court's own motion, rehearing *en banc* is DENIED.

In the *en banc* poll, seven judges voted in favor of rehearing (Judges Smith, Richman, Willett, Duncan, Engelhardt, Oldham, and Wilson), and ten judges voted against rehearing (Chief Judge Elrod and Judges Jones,

Stewart, Southwick, Haynes, Graves, Higginson, Ho, Douglas, and Ramirez).

Jennifer Walker Elrod, *Chief Judge*, concurring in the denial of rehearing en banc:

I voted against rehearing in this case because I fail to see *en banc*-worthy conflict among our appeal-waiver cases. Nevertheless, I respect the views of my colleagues who see things differently. I write separately in an attempt to briefly dispel some of the confusion surrounding appeal waivers and challenges to restitution orders.

In many restitution statutes, Congress limited restitution to the amount of the victim's losses that are the "proximate result" of the defendant's conduct. *See, e.g.*, 18 U.S.C. § 2259(b)(1), (c)(2). When a defendant who has agreed to an appeal waiver that preserves the right to appeal statutorily excessive punishments challenges a restitution order, the challenge will generally be one of two types. One type challenges the district court's proximate-cause analysis in reaching the amount of restitution, and the other challenges the restitution order on the basis that the district court failed to undertake the analysis altogether. The first type is impermissible under our precedent because it is barred by an appeal waiver. *E.g.*, *United States v. Alfred*, 60 F.4th 979, 982 (5th Cir. 2023); *United States v. Meredith*, 52 F.4th 984, 987 (5th Cir. 2022). The second is not. *E.g.*, *United States v. Winchel*, 896 F.3d 387, 389 (5th Cir. 2018); *United States v. Leal*, 933 F.3d 426, 431 (5th Cir. 2019). As we have explained:

> In *Winchel* and [its progeny], we declined to enforce the appeal waivers because the district courts failed to conduct the requisite analysis altogether. Here, the district court conducted the analysis, and Alfred challenges the outcome of that analysis. Such a challenge is barred by his appeal waiver.

*Alfred*, 60 F.4th at 982 (footnote omitted).

Both parties in this case understood this dichotomy. The government, for example, attempted to "distinguish[] this case from" *Winchel* by arguing that the district court did conduct an evidentiary analysis, meaning that West's appeal was barred as in *Alfred*. But it never asserted that *Winchel* was incorrectly decided or was otherwise foreclosed by *United States v. Bond*, 414 F.3d 542 (5th Cir. 2005). *See United States v. West*, No. 22-11001, slip op. at 4 & n.1 (5th Cir. May 21, 2025) (discussing *Bond*). Indeed, the government declined the opportunity to petition for *en banc* review of this case, and neither its petition for panel rehearing nor its merits brief identify conflicting appeal-waiver precedent.

With appreciation for our continued dialogue on our waiver jurisprudence, and with the utmost respect for my colleagues who sought to rehear this case *en banc*, I concur.

Stephen A. Higginson, *Circuit Judge*, concurring in the denial of rehearing en banc:

I write separately to give specific and historical context, to disagree with a point made in the dissental, and to add an observation.

As Chief Judge Elrod elaborates, the important point is context. The Supreme Court instructively has explained that child pornography offenses are a hard fit with restitution. *See Paroline v. United States*, 572 U.S. 434 (2014). These mandatory restitution orders—which require the involvement of the Department of Justice's Child Exploitation Notification Program—are often imposed not just after a negotiated guilty plea but even after sentencing itself. *See* 18 U.S.C. § 2259 (requiring the imposition of restitution for child pornography offenses); *id.* § 3664(d)(5) (allowing for the "final determination of a victim's losses" up to "90 days after sentencing" and allowing victims to petition for amended restitution orders thereafter). It is unsurprising that the post-sentencing restitution regime ill fits with a rigid application of variable sentencing appeal waiver terms negotiated months earlier, and I doubt our full court could compose a one-size-fits-all rule. Nor do I think defense counsel, prosecutors, and sentencing judges—who work through difficult, post-sentencing restitution hearings, dutifully applying *Paroline*—would themselves favor an ironclad rule which prevents appellate correction of unanticipated, material sentencing errors.

At the same time, I am concerned the dissental neglects the broader context when it asserts that the *Winchel* exception for extra-statutory sentences could "swallow" negotiated plea bargains. *Cf. United States v. Erwin*, 765 F.3d 219, 231–36 (3d Cir. 2014) (defendant's appeal-waiver breach warranted vacating and remanding so the government would not be obligated to move for a downward departure). That framing overlooks the reality that appeal waivers—a recent, prosecutorial imperative—themselves are the exception that, if too rigidly applied, can swallow our statutory role of

reviewing criminal sentences for correctness. Appeal waivers are a small piece in the complex, changeable criminal plea negotiation puzzle. Those puzzles get put together at re-arraignment, resolving criminal charges across the country. Yet our criminal justice system now largely incarcerates defendants based on disputes that arise and get resolved *much later*, at sentencing or after, and often based on uncharged facts identified by probation officers well after any guilty plea. In other words, these determinative but difficult fact/law decisions aren't made until months after the government and the defendant, in good faith, file any guilty plea agreement, with or without an appeal waiver.

A considerable percentage of federal circuit dockets is criminal, and an important part of our role is making sure that no person is imprisoned, fined, or punished wrongly. Furthermore, as the dissental acknowledges, the vast majority of this criminal docket arises from guilty pleas, meaning that issues of criminal punishment have great significance. Yet appeal waivers, confected by parties, seek to contract around judicial review of those issues. *See generally United States v. Mezzanatto*, 513 U.S. 196, 201–10 (1995); *Boykin v. Alabama*, 395 U.S. 238, 243 (1969). Every district judge knows how complex the Sentencing Guidelines are. Despite these judges' competence, experience, and best efforts, errors occur. That's inevitable in light of the Guidelines' over-structure, our Constitution's criminal rights guarantees, extensive statutory and criminal rules requirements, and the full range of legal and non-legal variables that sentencing judges assess. Again, my intuition is that sentencing judges welcome appellate review, which corrects material sentencing errors. No one—not defendants, not the government, and not judges who impose punishment—would draw confidence from, much less favor, an inflexible regime that deprives courts of the power to correct unanticipated and materially wrong sentences.

This gets to my significant point of disagreement.

With respect, I think the dissental is mistaken in its suggestion that party-contracted appeal waiver terms act like precedent, and thus are binding on us. That flaw leads to a more serious one: the suggestion that parties can contract to deprive courts of their statutory review power. Bedrock law, thankfully, confirms the opposite. *United States v. Story*, 439 F.3d 226, 230–31 (5th Cir. 2006) (observing that appeal waivers "do not deprive us of jurisdiction"); *see also United States v. Castillo*, 496 F.3d 947, 951–957 (9th Cir. 2007) (en banc).[1] I write separately to correct this misconception. Appellate waiver terms are creatures of contract, not legislation, and only Congress, not the executive, has prerogative to define the jurisdiction of the inferior courts.

Every day across the country, the government and defendants contract to resolve criminal charges, implicating a multitude of human and policy considerations, including the impact on victims, as well as the benefits of cooperation. But whether and how these parties contract in criminal cases in no way operates to deprive courts of authority, first to review and either accept or reject those agreements, and later to review and correct errors in punishment. This is fundamental. Appeal waivers do *not* deprive courts of jurisdiction. They are creatures of contract that, at most, *allow* courts, in our discretion, to decline to consider arguments that a defendant has voluntarily

---

[1] The dissental cites a law review article and a decision of ours for the proposition that we "cannot reach [waived errors] even if we want to." *See* Stephen E. Sachs, Dobbs *and the Originalists*, 47 Harv. J.L. & Pub. Pol'y 539 (2024); *United States v. Cabello*, 33 F.4th 281 (5th Cir. 2022)). Yet both simply acknowledge the long-settled distinction between forfeited and waived arguments; confirming only that, while we review the former for plain error, we "need not consider" the latter. *See Cabello*, 33 F.4th at 295 ("We need not consider Cabello's coercion challenge to his *Allen* charge because he waived it."); Stephen E. Sachs, Dobbs *and the Originalists*, 47 Harv. J.L. & Pub. Pol'y 539, 546 (2024) ("[T]he fact that courts have some discretion to look past these stipulations coexists with a rule that, in general, they shouldn't[.]").

and knowingly contracted not to contest. Stated otherwise, appeal waiver terms empower—not disempower—us.

As I highlight briefly below, there is an appeal waiver issue that one day *will* warrant en banc course correction. But it is not this niche *Paroline* restitution circumstance, which would bedevil a one-size-fits-all en banc decision. We should not cement more *non*-reviewability into our criminal justice system. Again, sentencing errors are inevitable given the host of intricate and variable Sentencing Guidelines determinations we ask district judges to make, as well as the determinative role of uncharged—and therefore unpled—fact-finding that appears in presentence investigation reports long after re-arraignment. These issues are compounded here in the unique, fact-specific *Paroline* restitution context. Nor should we expand the sweep of appeal waivers, allowing prosecutors not only to require them of defendants as a condition of resolving criminal charges, but also then to deploy those waivers against courts to deprive those courts of the power to review and correct errors that do happen.[2]

Instead, I would favor en banc review in an appropriate case to correct our court's reluctance to confirm what the great majority of other circuit

---

[2] Often, these sentencing errors couldn't have been anticipated, and commendably, prosecutors agree to address them. *See* U.S. Dep't of Just., Criminal Resource Manual § 626 ("Plea Agreements and Sentencing Appeal Waivers—Discussion of the Law") (discussing arguments on appeal that cannot be waived, including challenges to sentences exceeding a statutory maximum and advising that "in a case involving an egregiously incorrect sentence, the prosecutor should consider electing to disregard the waiver and to argue the merits of the appeal" because "[t]hat would avoid confronting the court of appeals with the difficult decision of enforcing a sentencing appeal waiver that might result in a miscarriage of justice"); *see also United States v. Davis*, 530 F.3d 318, 320–21 (5th Cir. 2008) (confirming government prerogative not to enforce an appeal waiver condition); *see generally Berger v. United States*, 295 U.S. 78, 88 (1935) ("It is as much [the prosecutor's] duty to refrain from improper methods calculated to produce a wrongful conviction as it is to use every legitimate means to bring about a just one.").

courts have held, and what the Department of Justice itself emphasizes to its prosecutors, U.S. Dep't of Just., Criminal Resource Manual § 626, namely that, regardless of party contracts to resolve criminal cases, there *always* remains judicial authority to correct "miscarriages" of justice, regardless of an appeal waiver. *Compare United States v. Jones*, 134 F.4th 831, 841 (5th Cir. 2025) (noting that our court has "declined explicitly either to adopt or to reject" a miscarriage-of-justice exception), *with id.* & n.52 (noting that the defendant "cite[d] a litany of other circuits that do apply the miscarriage-of-justice exception" and listing cases from the First, Third, Fourth, Eighth, Tenth, and D.C. Circuits). *See generally Garza v. Idaho*, 586 U.S. 232, 238–39, 239 n.6 (2019) (approvingly citing *United States v. Story*, *supra*, as well as lower courts' exceptions to party-contracted appeal waivers).

James C. Ho, *Circuit Judge*, concurring in the denial of rehearing en banc:

If a defendant has waived his right to appeal, then the defendant has waived his right to appeal. Failing to enforce appeal waivers diminishes the value of plea bargains for both defendants and prosecutors. *See*, *e.g.*, *Alvarez v. City of Brownsville*, 904 F.3d 382, 400–1 (5th Cir. 2018) (Ho, J., concurring). So I get the dissent. (Nor should the lack of an en banc petition present an obstacle. *See United States v. Bell*, 130 F.4th 1053 (5th Cir. 2025).)

But I see no hope of advancing the cause here. As I've noted, en banc can be taxing, but worth it, if there's a real opportunity to advance the rule of law. *See Crane v. City of Arlington*, 60 F.4th 976, 978 (5th Cir. 2023). But here, as in *Crane*, we already know that we will be unable to assemble an en banc majority to do what the dissenters want—namely, to overrule the three unanimous panels that decided *United States v. Winchel*, 896 F.3d 387 (5th Cir. 2018), *United States v. Leal*, 933 F.3d 426 (5th Cir. 2019), and *United States v. West*, 99 F.4th 775 (5th Cir. 2024). So it doesn't matter if I agree with the dissent. It's just like what I noted in *Crane*: "[Six] votes (the [five] dissenters and me) do not a majority make." *Crane*, 60 F.4th at 978.

So the best we could hope for is a splintered en banc decision. But as I've noted before, splintered decisions disserve the public, because they offer no guidance as to the law of our circuit. *See*, *e.g.*, John F. Davis & William L. Reynolds, *Juridical Cripples: Plurality Opinions in the Supreme Court*, 1974 Duke L.J. 59, 62, 86 (splintered decisions do "more to confuse the current state of the law than to clarify it," so judges "should consider well before choosing a path which leads to such confusion"); Comment, *Supreme Court No-Clear-Majority Decisions*, 24 U. Chi. L. Rev. 99, 156 (1956) (doubting "the propriety of handing down no-clear-majority decisions at all").

Accordingly, I reluctantly concur in the denial of rehearing en banc.

Andrew S. Oldham, *Circuit Judge*, joined by Smith, Duncan, Engelhardt, and Wilson, *Circuit Judges*, dissenting from the denial of rehearing en banc:

Kyle Lamar West pleaded guilty to two counts of production of child pornography. In the plea agreement, West waived his right to appeal. But he "reserve[d] the right[] . . . to bring a direct appeal of . . . a sentence exceeding the statutory maximum punishment." ROA.131. After the district court entered a restitution award of $6,000, West appealed anyway, arguing that the award exceeded the "statutory maximum."

Everyone should agree it did not. If the restitution award had exceeded the statutory maximum, West would obviously be entitled to a remand to reduce that award to some number at or below the statutory maximum. Instead, as the panel acknowledges, West could face an *even higher* restitution award on remand. *See United States v. West*, 99 F.4th 775, 783 n.2 (5th Cir. 2024) (conceding that a new "restitution order" on remand may "requir[e] West to pay far more than the" amount "he was initially ordered to pay"); *see also United States v. West*, --- F.4th ---, No. 22-11001, at *12 n.3 (5th Cir. May 21, 2025) (revised opinion) (reiterating this astonishing statement). So the restitution award could not have exceeded the statutory maximum, and West waived his right to bring this appeal—at least if an appeal waiver means anything.

The panel decision holds that, in fact, appeal waivers mean nothing when the underlying decision was "illegal." *West*, 99 F.4th at 780. With respect, that is deeply wrong. The whole point of an appeal waiver is that it prevents us from determining whether the district court erred. Saying appeal waivers matter only when we decide the district court got it right is like saying precedent matters only when we agree with it.

I

A

Today, 98% of convictions are secured by plea deals. *See* John Gramlich, *Only 2% Of Federal Criminal Defendants Go To Trial, And Most Who Do Are Found Guilty*, Pew Rsch. Ctr. (June 11, 2019), https://perma.cc/K8JG-48HG. Written plea agreements often include appeal waivers: The defendant agrees to give up a *quid* (the right to appeal) in exchange for a *quo* (reduced punishment).

But appeal waivers always contain exceptions. Some are express; others are implied. As relevant here, every appeal waiver preserves the defendant's right to appeal any sentence in excess of the statutory maximum. *See United States v. Keele*, 755 F.3d 752, 756 (5th Cir. 2014).

The stat-max exception makes sense. If a defendant agrees to plead guilty to one count of Felony $X$ that carries a 20-year statutory maximum, he should be able to rely on the fact that his downside sentencing risk is limited to 20 years. If, for whatever reason, the district court errs and sentences the defendant to 30 years, the appeal waiver should not bar the defendant from bringing an appeal to get the benefit of his bargain—namely, a remand for resentencing at some term at or below the 20-year statutory maximum.

With these basic principles of plea bargaining in mind, we defined "a sentence exceeding the statutory maximum punishment" in a published decision nearly 20 years ago. *See United States v. Bond*, 414 F.3d 542 (5th Cir. 2005). *Bond* held that the term "statutory maximum" in an appeal waiver "assumes its ordinary definition of the maximum term of imprisonment authorized by the statute of conviction." *Id.* at 543.

In *Bond*, the defendant pleaded guilty to one count of being a felon in possession and one count of possession with intent to distribute marijuana.

*Ibid.*; *see also* 18 U.S.C. § 922(g)(1) (felon-in-possession ban); 21 U.S.C. § 841(a)(1) (ban on possession with intent to distribute). He received 24 months in prison. *Bond*, 414 F.3d at 544. But, he argued, the factual basis for his plea agreement authorized a statutory maximum sentence of only 18 months. *Id.* at 544 & n.2. The sentencing judge used additional, judge-found facts to increase his statutory maximum sentence in violation of *Apprendi v. New Jersey*, 530 U.S. 466 (2000). Bond contended that the Supreme Court had specifically used the term "'statutory maximum' to describe the parameters of the rule announced in" *Apprendi*, so the district court's *Apprendi* error necessarily exceeded "the statutory maximum." *Bond*, 414 F.3d at 545 (quotation omitted).

In *Bond*, we rejected that argument. We held the *Apprendi* Court used the term "statutory maximum" in a "non-natural sense" in order to "justify and explain" its holding. *Ibid.* (quotation and citation omitted). The natural sense—which should govern a plea agreement—meant only "the upper limit of punishment that Congress ha[d] legislatively specified for violation of a statute." *Ibid.* (citation omitted). In Bond's case, the statutory maximum that Congress specified was 10 years on one count and 5 years on the other. So the 24-month sentence did not exceed the "statutory maximum" as that term was used by Congress and in the appeal waiver. *Id.* at 546.

Nearly 15 years later, a different panel of our court ignored *Bond* and interpreted the stat-max exception to mean something fundamentally different. In *United States v. Winchel*, 896 F.3d 387 (5th Cir. 2018), we held that *every* "illegal" restitution order necessarily exceeds the statutory maximum, and hence cannot be barred by an appeal waiver. *Id.* at 389. How so? Well, the *Winchel* panel reasoned that a restitution order must rest on a factual finding "that the defendant in question proximately caused the victim's losses." *Ibid.* Where a district court fails to make that factual finding, it violates *Paroline v. United States*, 572 U.S. 434 (2014)—and that somehow means the

resulting restitution order exceeds the statutory maximum. The *Winchel* panel's theory appears to be that any restitution order that is unaccompanied by the requisite proximate-cause finding is infected with *Paroline* error, so any award in excess of $0 necessarily exceeds the statutory maximum.

If that seems inconsistent with *Bond*, it is. After all, any sentence infected with *Apprendi* error must be 0 months, so any sentence in excess of that number necessarily exceeds *Winchel*'s understanding of the stat max. But the *Winchel* panel did not even attempt to reconcile its decision with *Bond*. Nor did the panel recognize that "[a]ppellate waivers foreclose challenges to many aspects of a sentence that may be unlawful." *United States v. Yiping Qu*, 618 F. App'x 777, 780 (5th Cir. 2015) (per curiam) (unpublished) (collecting cases illustrating the point).

Then in *United States v. Leal*, 933 F.3d 426 (5th Cir. 2019), a panel reaffirmed *Winchel*. The *Leal* panel held that a defendant's "*Paroline*-based appeal of the district court's restitution order" was, "according to our precedent, an 'appeal of a sentence exceeding the statutory maximum punishment.'" *Id.* at 430 (quoting *Winchel*, 896 F.3d at 389). The panel again failed to explain how *Winchel* fit with *Bond*.

From there, confusion mounted.

In *United States v. Meredith*, 52 F.4th 984 (5th Cir. 2022), a panel held that a restitution award of $6.8 million did not exceed the "statutory maximum" because the statutory maximum was whatever "the parties in [the] plea agreement" had "agreed to." *Id.* at 987 (quoting 18 U.S.C. § 3663(a)(3)) (emphasis removed). In doing so, the *Meredith* panel found itself bound to follow *Bond* under the rule of orderliness, despite any contrary indications in later cases. *Id.* at 987 n.2. It did not cite *Winchel*.

One year later, in *United States v. Alfred*, 60 F.4th 979 (5th Cir. 2023), another panel of our court held that a sentence "imposed in violation of the

proximate-cause requirements described in *Paroline*" was barred by an appeal waiver containing a "statutory-maximum exception." *Id.* at 980–81. Even if the district court had run the proximate-cause calculation incorrectly, the district court had at least *considered* it. *Id.* at 982. So the appeal waiver barred the appeal. *Ibid.*

B

*West* is our court's latest step into the precedential quagmire. The panel decision holds that a restitution order infected with *Paroline* error "is an illegal sentence," and thus is "in excess of the statutory maximum." 99 F.4th at 780. The original *West* decision did not explain how its holding comports with *Bond* (though the panel now offers an after-the-fact justification in response to this dissent, *see West*, --- F.4th ---, No. 22-11001, at *4 n.1).

The *West* panel then makes a half-hearted effort to distinguish *Meredith* and *Alfred*. In those cases, the defendants acknowledged the district court had conducted *some Paroline* analysis; the defendants instead alleged the district court had "erred" in that "analysis and that as a result the restitution order exceeded the statutory maximum." *West*, 99 F.4th at 780 (citations omitted). In *West* and *Winchel*, though, the district court had "failed to conduct the requisite analysis *altogether*." *Ibid.* (quoting *Alfred*, 60 F.4th at 982). The *West* panel does not explain the legal relevance of that distinction, which would appear to bear no relation to the illegality or excessiveness of the punishment.

*

To sum up our precedent: Under *Bond*, an appeal waiver cannot be avoided by arguing that a sentence is "illegal" or "erroneous." But if a *restitution* award is "erroneous," then the appeal waiver is meaningless under *Leal* and *Winchel*. But under *Alfred* and *Meredith*, some appeals of "erroneous" restitution awards are nonetheless barred by appeal waivers, while

under *West* still others are not. For anyone hoping to strike a plea deal under this cloud of uncertainty, for any district judge hoping to accept plea deals under this cloud of uncertainty, and for any appellate panel hoping to know the extent of its post-plea-deal power under this cloud of uncertainty: Good luck.

## II

Instead of toiling to untie the "crooked coils" of this Gordian knot of precedent, we should have cut through it en banc. *Cf.* 7 Plutarch, Plutarch's Lives: Demosthenes and Cicero; Alexander and Caesar 273 (trans. Bernadotte Perrin 1919) (describing the tale of Alexander the Great's cutting the Gordian knot, fulfilling the prophecy that "whosoever loosed the fastening was destined to become king of the whole world"). I explain that (A) *Winchel*, *Leal*, and *West* should be overruled. Moreover, (B) the *Winchel* line of cases has created a host of problems—these cases have rendered appeal waivers senseless; vitiated the very point of an appeal *waiver*; and drawn distinctions that make little sense of *Paroline*, *Winchel*, or the text we are supposed to be interpreting.

## A

Every restitution-appeal-waiver case poses a trilemma: Do we follow *Bond* or *Leal-Winchel* or *Alfred-Meredith*? These three lines of precedent fundamentally conflict with one another. And only the en banc court can fix that.

Let's start with the irreconcilable tension between *Bond* and *Leal-Winchel*. *Bond* held that the term "'statutory maximum' assumes its ordinary definition of the maximum term of imprisonment authorized by the statute of conviction." 414 F.3d at 543; *see also id.* at 546 ("[T]he term 'statutory maximum' in an appeal waiver means the upper limit of punishment that Congress has legislatively specified for violations of a statute." (quotation and citation omitted)). *Winchel* ignored that rule, holding that *any* "illegal"

sentence "necessarily exceeds the statutory maximum." 896 F.3d at 389 (quoting *United States v. Broughton-Jones*, 71 F.3d 1143, 1147 (4th Cir. 1995)). Never mind that under *Bond*, we had long recognized that "[a]ppellate waivers foreclose challenges to many aspects of a sentence that may be unlawful." *Yiping Qu*, 618 F. App'x at 780 (collecting cases illustrating the point). And never mind that no restitution order could possibly exceed the "maximum term of *imprisonment* authorized by the statute of conviction." *Bond*, 414 F.3d at 543 (emphasis added).

It gets worse. In *Winchel*, the restitution order did not even exceed "the upper limit of punishment that Congress ha[d] legislatively specified for violations of a statute." *Bond*, 414 F.3d at 546 (quotation and citation omitted). The district court had merely ordered the "defendant to pay nearly $1.5 million in restitution *without determining* whether that amount complie[d] with" the statute. *Winchel*, 896 F.3d at 389 (emphasis added). On remand, though, the district court could impose the exact same penalty—if not an even greater one. So too here. But you need not take my word for it. Take the panel's:

> We note that **this may well lead to a restitution order requiring West to pay far more than the $6,000 he was initially ordered to pay**. It is not for us to question litigation strategy and counsel assured us that West was well aware of the risks inherent in his argument.

99 F.4th at 783 n.2 (citation omitted; emphasis added); *see also West*, --- F.4th ---, No. 22-11001, at *12 n.3 (doubling down on this).

No competent speaker of the English language can seriously claim that an award exceeds the statute's "upper limit" when an even higher award remains possible. *Bond*, 414 F.3d at 546 (citation and quotation omitted). If $6,000 does not exceed the stat max—such that the panel can predict that

West may have to pay more on remand—how does $6,000 exceed the stat-max exception to his appeal waiver?

Insofar as there is a distinction between *Bond* and *Winchel*, it only makes things worse for *Winchel*. *Bond* involved a violation of *Apprendi*. Specifically, "the district court engaged in fact-finding . . . that increased the applicable sentencing range" under the then-mandatory Sentencing Guidelines. *Bond*, 414 F.3d at 544. So Bond "was sentenced to 24 months," but "the facts admitted in his guilty plea authorized a maximum of only 18 months." *Id.* at 545. The *Apprendi* line of cases forbade such a sentence. Under *Apprendi*, "any fact that increases the penalty for a crime beyond the prescribed statutory maximum" must be either found by a jury or admitted by the defendant. 530 U.S. at 490; *see also Blakely v. Washington*, 542 U.S. 296, 303 (2004). *Booker* extended that holding to facts that increased the maximum sentence under the then-mandatory Sentencing Guidelines. *United States v. Booker*, 543 U.S. 220, 244 (2005). In doing so, it continued to invoke the language of *Apprendi*, stating that the error in *Booker* had led the district court to impose a sentence that exceeded the "statutory maximum," at least "for *Apprendi* purposes." *Id.* at 232.

Thus if any case provided a reason to expand the statutory-maximum exception, it was *Bond*. The Supreme Court had already said that the problem was that the district court had imposed a sentence in excess of the "statutory maximum." And the district court in *Bond* had, in fact, imposed a term of imprisonment greater than the maximum possible sentence it could have imposed. If the illegal and excessive sentence of imprisonment in *Bond* did not fit within the statutory-maximum exception, it follows *a fortiori* that erroneous restitution awards do not either.

## B

These precedents have created other problems, too. (1) *Winchel*'s logic, faithfully followed, would nullify all appeal waivers. And (2) the panel's recent effort in *West* to preserve but narrow *Winchel* makes little sense of *Paroline*, *Winchel*, or the text of the appeal waiver.

## 1

Whatever we interpret an appeal waiver to mean, it must mean that the defendant has waived *something*. But under the logic of *Winchel*, the appeal "waiver" in fact waives nothing. *Whenever* the district court commits an error at sentencing, *Winchel*'s understanding of the statutory-maximum exception should apply. *Winchel* reasoned that "a restitution order imposed when it is not authorized . . . is no less 'illegal' than a sentence of imprisonment that exceeds the statutory maximum." *Winchel*, 896 F.3d at 389 (quoting *Broughton-Jones*, 71 F.3d at 1147)).[3] Thus, every time the district court errs, the sentence it imposes should fall within the statutory-maximum exception. The exception, then, would swallow the rule.

Here, I list a number of challenges that should fall within the statutory-maximum exception under *Winchel*. But (nearly) all of these we have found barred by appeal waivers.

---

[3] Lest one think I am overreading *Winchel* and *Leal*, later cases have read *Winchel* and *Leal* as I have. Consider *United States v. Kim*, 988 F.3d 803 (5th Cir. 2021). There, we emphasized that "*Leal*'s holding" recognized "the legal truism that a court must not impose a sentence, including an order of restitution, that is unauthorized by law." *Id.* at 810 n.1; *see also id.* at 811 ("*Leal* states that . . . the court cannot give the sentence effect if it is not authorized by law." (quotation omitted)). Under that reasoning, a sentence "not authorized by law"—*i.e.*, "illegal"—falls within the logic of *Leal*. So even if *Winchel* could have been read narrowly in some alternate universe, it has not been. Those broad readings, if entitled to the protection of the rule of orderliness, would make "illegal" restitution orders appealable no matter what an appeal waiver says.

- When a district court improperly calculates the losses proximately caused by the defendant in ordering restitution under 18 U.S.C. § 2259, the award is illegal. *See Paroline*, 572 U.S. at 445–48. So it exceeds the statutory maximum under *Winchel*. *But see Alfred*, 60 F.4th at 982 (holding otherwise).

- Under 18 U.S.C. § 3553(a), a sentence must be "sufficient, but not greater than necessary, to comply with the purposes set forth" in that subsection. When the district court imposes a sentence greater than necessary—or even perhaps insufficient—to (1) "reflect the seriousness of the offense," (2) "promote respect for the law," (3) "provide just punishment for the offense," (4) "afford adequate deterrence," (5) "protect the public from further crimes of the defendant," or (6) "provide the defendant with needed" rehabilitation, *id.* § 3553(a)(2), the sentence is illegal. So it exceeds the statutory maximum under *Winchel*. *But see United States v. Jones*, 610 F. App'x 439, 440 (5th Cir. 2015) (per curiam) (unpublished) (holding otherwise); *United States v. Flores-Quintana*, 444 F. App'x 819 (5th Cir. 2011) (per curiam) (unpublished) (same).

- When a district court altogether "fail[s] to consider the § 3553(a) factors," its sentence is illegal. *Gall v. United States*, 552 U.S. 38, 51 (2007). So the sentence exceeds the statutory maximum under *Winchel*. *But see United States v. Mata-Ramirez*, 562 F. App'x 234, 235 (5th Cir. 2014) (per curiam) (unpublished) (holding otherwise).

- Under 18 U.S.C. § 3583(d), a district court may impose discretionary conditions on supervised release. Such conditions, though, must be "reasonably related to [certain] factors set forth in section 3553(a)." *Id.* § 3583(d)(1). If a condition is not "reasonably related" to those factors, it is illegal. So it exceeds the statutory

maximum under *Winchel. But see Yiping Qu*, 618 F. App'x at 778–80 (holding otherwise).

- Such conditions must also "involve[] no greater deprivation of liberty than is reasonably necessary for the purposes set forth in" certain parts of § 3553(a). 18 U.S.C. § 3583(d)(2). If a condition exceeds what is "reasonably necessary," it is illegal. So it exceeds the statutory maximum under *Winchel. But see Yiping Qu*, 618 F. App'x at 778–80 (holding otherwise).

- Such conditions must also be "consistent with any pertinent policy statements issued by the Sentencing Commission pursuant to 28 U.S.C. 994(a)." 18 U.S.C. § 3583(d)(3). If a condition is inconsistent with even *one* such policy, it is illegal. So it exceeds the statutory maximum under *Winchel. But see Yiping Qu*, 618 F. App'x at 778–80 (holding otherwise).

- A sentence or other form of punishment that is "cruel and unusual" is illegal. U.S. CONST. amend. VIII. So it exceeds the statutory maximum under *Winchel*.[4] *But see United States v. Keele*, 755 F.3d 752, 756–57 (5th Cir. 2014) (holding such a challenge barred by an appeal waiver).

- When a district court "treat[s] the Guidelines as mandatory," its sentence is illegal. *Gall*, 552 U.S. at 51. So it exceeds the statutory maximum under *Winchel*.

- When a district court "select[s] a sentence based on clearly erroneous facts," its sentence is illegal. *Ibid.* So it exceeds

---

[4] True, such a punishment would violate the Constitution. But it would be equally "illegal" under *Winchel*. In any event, no statute can authorize unconstitutional punishments. The statute would be "void" as applied to the case at issue since it would be "repugnant to the constitution." *Marbury v. Madison*, 5 U.S. (1 Cranch) 137, 180 (1803). So the punishment would still exceed any *statutory* maximum under *Winchel* since no statute could authorize the punishment.

the statutory maximum under *Winchel*. *But see United States v. Barrientos-Ramirez*, 537 F. App'x 582, 583 (5th Cir. 2013) (per curiam) (unpublished) (holding that an appeal waiver applied to a claim that "the district court clearly erred in finding that [the defendant] obstructed justice").

- When a district court "fail[s] to adequately explain the chosen sentence," that sentence is illegal. *Gall*, 552 U.S. at 51. So it exceeds the statutory maximum under *Winchel*. *But see United States v. Williams*, No. 22-40185, 2023 WL 234772, at *1–2 (5th Cir. Jan. 18, 2023) (per curiam) (unpublished) (holding otherwise).

- When a district court "fail[s] to calculate (or improperly calculat[es]) the Guidelines range," its sentence is illegal. *Gall*, 552 U.S. at 51. So it exceeds the statutory maximum under *Winchel*. Thus, when an appeal waiver contains a separate carveout for arithmetic errors—like the waiver did in *Bond*, 414 F.3d at 543, and in *West*—that carveout is pure surplusage because the mathematical error was appealable under *Winchel* all along. *But see Bond*, 414 F.3d at 545 (plea agreements and appeal waivers must be interpreted "like a contract"); *D.E.W., Inc. v. Loc. 93, Laborers' Int'l Union*, 957 F.2d 196, 200 (5th Cir. 1992) ("A court cannot disregard as surplusage the succeeding provisions of a contract; it must give effect to all.").

We would also eviscerate the very concept of an appeal *waiver*. Waiver is a fundamental legal concept, which we apply daily in our jobs. It bears important distinctions from forfeiture. Put simply, "[a] forfeited argument is sick unto death, and only the healing hand of the court can revive it; a waived argument has been taken out back and shot." Stephen E. Sachs, Dobbs *and the Originalists*, 47 Harv. J.L. & Pub. Pol'y 539, 546 (2024). So *waived* errors are completely off the table. We cannot reach them even if we want to.

*See United States v. Cabello*, 33 F.4th 281, 295–96 (5th Cir. 2022). As we have explained at greater length:

> Longstanding precedent distinguishes between forfeiture of a right and waiver of it. Forfeiture is the failure to make the timely assertion of a right. Waiver, in contrast, is the intentional relinquishment or abandonment of a known right. That distinction matters because plain-error review is available only for forfeitures—not waivers. This distinction is as old as [*United States v. Olano*, 507 U.S. 725 (1993)] itself, where the Court explained that "[d]eviation from a legal rule is 'error' [for plain-error purposes] *unless the rule has been waived*." [*Id.*] at 732–33 (emphasis added); *see also ibid.* (going on to give waiver of the right to a trial as an example). That means a defendant who merely fails to object at trial gets plain-error review—but a defendant who waives a right at trial can't play take-backs on appeal.

*Id.* at 295 (quotations omitted).

So *Winchel*'s sweeping logic renders the appeal waiver, and all our teachings about waiver, nugatory. Under *Winchel*'s logic, we should apply our "healing hand" to "revive" every conceivable challenge to the legality of the punishments imposed at sentencing. Sachs, *supra*, at 546.

*Winchel*'s discrete holding poses threats, too. It holds that an appeal waiver does not bar a challenge to an order of restitution wrongfully imposed under *Paroline*. But the point of the appeal waiver is to intentionally relinquish the defendant's right to appeal "the conviction, sentence, fine and *order of restitution* or forfeiture *in an amount to be determined by the district court*." ROA.131 (emphasis added); *see also United States v. Teijeiro*, 79 F.4th 387, 394 (5th Cir. 2023) (interpreting identical language to mean that the defendant had waived his right to appeal an "order of restitution in an amount to be determined by the district court" (quotation omitted)). And the effect of that waiver is that the right to appeal an order of restitution *in whatever amount the*

*district court might deem appropriate* "has been taken out back and shot."
Sachs, *supra*, at 546.

2

The *West* panel faced an unenviable task in trying to navigate our irreconcilable precedents. But its efforts to distinguish some cases while following others only compound the doctrinal mess.

Start with how *West* distinguished *Meredith* and *Alfred*. *West* distinguished those cases on the ground that the district court in *West* and *Winchel* had "failed to conduct the requisite analysis *altogether*." *West*, 99 F.4th at 780 (quoting *Alfred*, 60 F.4th at 982). True, in *Meredith* and *Alfred*, the defendant acknowledged the district court conducted *some* analysis; the defendant alleged only that the district court had "erred" in that "analysis and that as a result the restitution order exceeded the statutory maximum." *Ibid.* (citations omitted).

But drawing that line raises three fundamental problems.

First, it makes little sense of *Paroline*. *Paroline* held that restitution under § 2259 is "proper . . . only to the extent the defendant's offense proximately caused a victim's losses." *Paroline*, 572 U.S. at 448. It did not distinguish cases in which the district court *failed* to conduct a proximate-cause analysis from cases in which the district court conducted that analysis *poorly*. That makes sense. Throughout sentencing law, the Supreme Court has treated as indistinguishable the failure to run a calculation and running the calculation incorrectly. *See, e.g.*, *Gall*, 552 U.S. at 51 ("[Appellate courts] must first ensure that the district court committed no significant procedural error, such as failing to calculate (or improperly calculating) the Guidelines range."). And when it comes to criminal sentencing (or federal law more generally), I am unaware of any doctrine that says, "oh well, at least the district

court gave it a shot." What an odd basis for saying that we will hear some appeals but not others.

Second, it makes little sense of *Winchel*. *Winchel* held that *Paroline* errors fall within the statutory-maximum exception on the ground that "a restitution order imposed when it is not authorized is no less 'illegal' than a sentence of imprisonment that exceeds the statutory maximum." *Winchel*, 896 F.3d at 389 (quotation and citation omitted). In both *Alfred* and *West*, though, the restitution order imposed was allegedly "not authorized" under *Paroline*. The one was "no less 'illegal'" than the other.

Third and finally, it makes little sense of the text of the appeal waiver. If the *Paroline* errors in cases like *Alfred* do not fall within the statutory-maximum exception, it follows *a fortiori* that those in *Winchel* do not. When the court runs the analysis but does it incorrectly, the defendant's challenge is that the award is actually too high. In other words, if we were to find an error, it would be that the district court awarded too much in restitution. In cases like *West*, though, the claim is only that the proximate-cause analysis was not run at all. So after the district court runs the analysis it might impose a higher award—as everyone acknowledges. *See West*, 99 F.4th at 783 n.2 ("We note that this may well lead to a restitution order requiring West to pay far more than the $6,000 he was initially ordered to pay. It is not for us to question litigation strategy and counsel assured us that West was well aware of the risks inherent in his argument." (citation omitted)); *see also West*, --- F.4th ---, No. 22-11001, at *12 n.3 (same). How can an award that is actually too high not exceed the "statutory maximum" but an award which may very well be too low does?

## III

Finally, some counterarguments. (A) One might argue this is a unique case. The appeal waiver defines "sentence" to include "restitution." So

perhaps that warrants ignoring the appeal waiver? Next, (B) one might think *Winchel* is a stable precedent—even if it violates our rule of orderliness by conflicting with the earlier decision in *Bond*. So perhaps that warrants respect under *stare decisis*? Both of these propositions are wrong.

## A

First, one might think West's appeal waiver is unique. The appeal waiver, one might think, explicitly defines "sentence" to include "restitution." Thus, when West "reserve[d] the right" to appeal "a sentence exceeding the statutory maximum punishment," ROA.131, he reserved the right to appeal restitution orders like this one.

The conclusion does not follow. Even if "sentence" were read to include restitution, I still do not see how this restitution order could have exceeded any "statutory maximum." As discussed throughout, the district court could have imposed an even higher award, and it remains able to do so on remand. So the award could not have exceeded the statutory maximum.

Anyway, the premise of the argument is false. West's appeal waiver does not include restitution within the term "sentence." Within the section titled "Waiver of right to appeal or otherwise challenge sentence," the appeal waiver distinguishes the sentence from restitution. ROA.131. The defendant is said to have waived the right "to appeal the conviction, sentence, fine *and order of restitution*." *Ibid.* (emphasis added). The text reaffirms that distinction between the "sentence" and the "order of restitution" in the very next sentence. *See ibid.* ("The defendant further waives [his] right to contest the conviction, sentence, fine *and order of restitution* or forfeiture in any collateral proceeding." (emphasis added)). But the defendant "reserves [his] right . . . to bring a direct appeal of" the "sentence" *alone*—not an order of restitution—"exceeding the statutory maximum punishment." *Ibid.* There is no reason to read the term "sentence" as used in the statutory-

maximum exception to include an order of restitution when the two (grammatical) sentences immediately preceding it separate an "order of restitution" from the "sentence."

True, *another* section of the plea agreement—four pages earlier—entitled "Sentence," mentions restitution. ROA.127. But for three reasons, I do not read that section as a definition section—at least, not as a definition section relevant to the appeal waiver.

First, it would make no sense of the appeal waiver's severing the "sentence" from any fines, orders of restitution, or forfeiture. All those distinct punishments are included in the alleged definition section. So the appeal waiver would not separate those specific punishments from the "sentence" if the term "sentence" already included them since that would render the enumeration of those other punishments superfluous. For that reason, *even if* the "Sentence" section were a definition section, it would not apply to the appeal waiver since it would otherwise "create obvious incongruities in the language" of the appeal waiver. *Lawson v. Suwannee Fruit & S.S. Co.*, 336 U.S. 198, 201 (1949); *see also Util. Air Regul. Grp. v. EPA*, 573 U.S. 302, 320 (2014). Here, as is often the case, any general rule set forth in the definition section would need to yield to the specific appeal-waiver provision whose context requires that "sentence" not be read to include orders of restitution. *See* Antonin Scalia & Bryan A. Garner, Reading Law: The Interpretation of Legal Texts 183 (2012) ("If there is a conflict between a general provision and a specific provision, the specific provision prevails.").

Second, there is little reason for such a "definition" section. The bulk of the remainder of the plea agreement discusses all these punishments separately, not as a unit. *See, e.g.*, ROA.129 (discussing three separate mandatory special assessments, all of which are enumerated in the "Sentence" section);

*ibid.* (discussing "payment of restitution," also enumerated in the "Sentence" section). The definition, then, would do little work.

Third, definition sections are nearly always titled "Definitions," or something similar. *See, e.g.*, 15 U.S.C. § 77b ("Definitions"); 11 U.S.C. § 102 ("Rules of construction"); 15 U.S.C. § 1681a ("Definitions; rules of construction"). This one is not. Indeed, it bears none of the hallmarks of a definition section.

Instead, I read the "Sentence" section to do what it says it does— enumerate the various "minimum and maximum penalties the Court can impose." ROA.127. Because criminal restitution is a form of "penalty," *United States v. Hayes*, 32 F.3d 171, 172 (5th Cir. 1994), it is natural to include restitution in that section.

On this front, West's appeal waiver is not unique. It is materially identical to the plea agreement in *Winchel*. That agreement also contained a third section entitled "Sentence." ROA.16-11208.290. It enumerated "[t]he minimum and maximum penalties the Court c[ould] impose." *Ibid.* And it included "restitution" among those penalties. *Id.* at 290–91. The plea agreement in *Alfred* was substantially similar. This is unsurprising. Federal prosecutors (and their leadership at Main Justice in Washington) do not start from scratch every time they negotiate a plea deal.

## B

*Winchel* does not provide a stable background rule against which appeal waivers should be interpreted. *Winchel*'s confused reasoning has only begotten instability. The future promises more of the same.

A background rule cannot be stable if it stands in unavoidable conflict with another equally applicable background rule in every case in which it might be applied. If we were to read appeal waivers against the background

of *Winchel*, we should equally read them against the background of *Bond*. In every case in which *Winchel* is implicated, so is *Bond*. But *Winchel* and *Bond* always and necessarily conflict. *See supra* Part II.A. So *Winchel* cannot provide a *stable* background rule.

The practical reality re-affirms this logical necessity. *Winchel* only recently celebrated its sixth birthday. At such a young age, *Winchel* is hardly a mature and stable precedent—a moniker generally reserved for precedents at least as old as our law clerks. *See, e.g.*, *City of Arlington v. FCC*, 569 U.S. 290, 298 (2013) (calling the then-twenty-eight-year-old *Chevron* doctrine a "stable background rule" for purposes of statutory interpretation).

Moreover, "[g]iven our constant tinkering with" *Winchel* "and its inconsistent application" by panels of our court, it "is hard to see how anyone" could have come to "rely on" it. *Loper Bright Enters. v. Raimondo*, 144 S. Ct. 2244, 2272 (2024). As to our "inconsistent application" of *Winchel*, *Meredith* and *Alfred* refused to apply it. *See supra*, at 14–15, 24–25. And of course, we have not really applied it in any other case where we have held that an appeal waiver barred a challenge to an allegedly "illegal" sentence. *See supra*, at 19–22. As to our "tinkering with" *Winchel*, recall that *West*—in seeking to preserve *Winchel*—drew a distinction that made little sense of *Winchel*'s logic, its roots in *Paroline*, or the text of the appeal waiver. *See supra*, at 24–25. Thus, it is "hard to see how anyone" could have come to "rely on" *Winchel*.

## IV

Finally, a brief response to the separate opinion by Judge Higginson. It says that parties can *never* "contract to deprive courts of their statutory review power." *Ante*, at 7 (Higginson, J., concurring in denial of rehearing en banc); *see also id.* at 9 ("[T]here *always* remains judicial authority to correct 'miscarriages' of justice . . . ."). That would be an astounding inversion of

the law. Consider the canonical case on waiver versus forfeiture of criminal-procedure rights:

> [A] defendant who knowingly and voluntarily pleads guilty in conformity with the requirements of Rule 11 **cannot have his conviction vacated by court of appeals on the grounds that he ought to have had a trial. Because the right to trial is waivable, and because the defendant who enters a valid guilty plea waives that right, his conviction without a trial is not "error."**

*Olano*, 507 U.S. at 733 (emphasis added). So according to the Supreme Court, a defendant *can* waive his *constitutional* right to a trial, and that waiver prohibits us from finding an error. But according to my concurring colleague, a defendant *cannot* waive his *statutory* right to appeal in a way that prohibits us from finding an error? "[S]heer applesauce." *Zuni Pub. Sch. Dist. No. 89 v. Dep't of Educ.*, 550 U.S. 81, 113 (2007) (Scalia, J., dissenting).

Adding oddity to oddity, Judge Higginson then says that nothing on earth should prevent a federal court from reaching and fixing "unanticipated and materially wrong sentences." *Ante*, at 6 (Higginson, J., concurring in denial of rehearing en banc). That will require overturning *a lot* of the Supreme Court's precedents regarding justiciability, plain error, and the like. But it also fits uncomfortably with this case because all agree that West's victory today is entirely pyrrhic: With virtual certainty, he will pay a *higher* restitution award on remand. It is surreal to think the criminal-defense bar will welcome this understanding of a "materially wrong sentence."

\*　　\*　　\*

If the rule of law consists in anything, it is that the legal rules be knowable *ex ante*. But for judges, defendants, and prosecutors in the Fifth Circuit, even this most basic feature of the rule of law is absent.

Instead, whether an appeal waiver has any effect in our circuit depends on chance. If the Great Wheel in the Office of the Fifth Circuit Clerk of Court assigns the defendant's case to one set of judges, he loses. If he is granted another, he wins. Two sets of judges obeying two sets of precedents. Whether our court hears an appeal turns on a coin flip.

I respectfully dissent.